Next case on the docket is the County of Shelby v. Galvin and it's 5-19-271. Counselor, please proceed. May it please the court. Counsel, my name is John Barger, the law firm of Craig and Craig and Mattoon. Representing David and Barbara Galvin. As I was preparing for this oral argument yesterday, reading through the approximate 60 pages of brief that we've submitted to the court, I was trying to think, what can I tell you that isn't already there? The answer is not much. I would ask, however, that you re-review the introduction and the conclusion to our reply brief, because I think it sets out in a nutshell this case and the basis for our appeal. I'll attempt to hit the high points, answer any questions you have, and respond to arguments of counsel. I'm not intending on waiving anything that is set out in your brief. This is an appeal pursuant to Supreme Court Rule 304B-5 and 303. We contend that there was no justiciable issue before the trial court when the order of August 17, 2017 was entered. Mr. Curl and the Goodwins had not complied with the intervention statute. They never filed a complaint or petition. We pointed that out to the court and to counsel several times, and it was never remedied. The complaint or petition is mandatory under the statute and under the case law that we've cited in our brief. They have no official position or standing in this case. By the time the order was entered, Shelbyville Township had settled and was seeking no relief. Shelby County and the Goodwins were also not seeking any relief of the court other than dismissal of the case. The court was proceeding sua sponte and in reality prosecuting the case itself. The order is void and must be vacated. The order is also contrary to the Platt Act and the County Zoning Ordinance. It disregards several provisions of the Platt Act, number one being that only an owner may subdivide land. Second, the Platts are supposed to be provided to the County Board rather than to a court for approval. Finally, the rights of a party cannot be abridged with regard to a Platt without their consent. Here there is no consent by the Gallows. There's nothing in the Shelby County Zoning Ordinance that requires construction of improvements before the development of a part of the subdivision. It simply doesn't make any sense. As you recall, we presented an argument that it creates a stonehenge type situation or a subdivision with all the improvements constructed and two houses sitting there. It just doesn't make sense. Moreover, it is at great expense to the Gallows or the County to do this sort of construction. I know you've got quite a history in this case as far as the years that passed and there were joint motions filed, including your clients asked the court to consider the matter. By your joint motions, did your client agree that the court had the powers to enter the order that they ended up with eventually? We contend that it did not, simply because the relief we requested, the joint amended joint motion filed by the County and the Gallows simply asked that the court vacate the order of June 11, 2008 under the revestment doctrine and then to remand the matter to the County to be properly considered under the zoning and subdivision ordinance. That's the relief we asked for the trial court. The court took it upon itself to require us to continue to present plaques to the court and we did what the court told us to do. I don't know if that answers your question. You may go on. Mr. Correll's septic system encroaches on my client's property. My clients didn't give consent to this encroachment or the easement the court provided. It is clearly a taking. The court provided for certain drainage easements and drainage remedies. There's only one engineer to have looked at this situation. Scott Haney from the Long Island Grundle and Effingham. He concluded there was no drainage issue. All the evidence refutes there is a drainage issue. The only thing presented are the arguments of Correll and Goodwin's attorneys and they haven't been shown to have proper licenses to testify to those sort of things. As to the sale of the real estate, that is the ultimate here. It goes well beyond the request of Mr. Correll and the Goodwins. As per the motion for alternative plan, there's no authority cited for it. There's no effort in following any condemnation statute. It's totally improper in our position. The county board is prepared to address subdivisions on platting. That's where this matter should be. There's clearly a taking of my client's property without compensation or due process. It prevents the Galvin's from doing with their land what they would like to do, namely to build a house on land in the subdivision themselves and to have relatives be allowed to do the same. Again, you've got the sewer easement. That's a taking of the Galvin's property without any compensation. You've got the drainage issues. There's again no compensation for any of this. What do you mean by your client can't build the house on the property or their family can't? How many lots are there? Well, because of the configuration set forth in the plat that Correll and Goodwin submitted to the court and the court approved, the lots are too small for what my client wants to do with the property. That's the basic problem. The order is my client's to prepare and sell their own property. They don't want to do that. There's clearly a taking from the Galvin's and a giving of property to Mr. Correll without compensation. There's a taking of property without compensation and there's a taking of property without any due process. There's no effort by the trial court to comply with eminent domain statutes. There's no argument that there's any consent by the Galvin's to this scheme. There's no public purpose for what the court has done by way of this order. You're going to have to excuse me a second here. Cold medicine has gone up on me. We contend this case should have been dismissed pursuant to the county's motion for voluntary dismissal. The Galvin's consented to it. Again, there was no standing by Mr. Correll or the Goodwins. Shelbyville Township had settled and was not actively participating in the suit. We contend there was an abuse of discretion by the trial court in denying the motion for voluntary dismissal. I think it's noteworthy here to look at the resolution of the Shelby County Board and the unanimous decision. The county board indicated it did not want to pursue or prosecute this action any further. The trial court ignored that. Basically, the trial court held the parties hostage in this case and proceeded to the order of August of 2017. We contend that the order of June 11, 2008 was vacated. It first conflicts with the county zoning ordinance. So under that scenario, it should be void in the first place. The October 31, 2014 order allowed the amended joint motion part and denied it in part. That order clearly indicates that the request for replatting before the county was denied. So what was allowed? We contend the only reasonable interpretation of that is the June 11, 2008 order was vacated. In any event, the court admitted in a hearing in June of last year that the August 21, 2017 order in fact replaces and supersedes the June 11, 2008 order. Both cannot exist at the same time. There was a finding of contempt on my client's part and a fine of $25,000 imposed plus the award of attorney's fees to Kerlin Goodwins. We ask that all of that be vacated. It should be noted that we tried to appeal at the trial court under 304A. The trial court denied that motion without even giving us oral argument. Our prayer for relief is that the orders of August 21, 2017 and February 17, 2017 be vacated. That the court remand the case to the trial court with instructions to dismiss the case. That the contempt finding, fine and award of attorney's fees be vacated. And find that the June 11, 2008 order has been vacated. Thank you. May it please the court and counsel. My name is Brian Kibler and I am the state's attorney of Effingham County. However, I've been specially appointed to represent the interests of Shelby County due to conflicts in their state's attorney's office. And I've been on this case for a few years now. Even though I'm technically the appellee, most of the county's positions align with the appellant. So I'm only going to take a few minutes and then I'm going to give the balance of the time to Ms. Noren who is pretty much the true appellee. After all, the interests of the county are aligned right now for the most part with the appellant. And outside of the issue of possibly court imposed sanctions on fees directed at the Galvins. I agree with pretty much everything Mr. Barger just said. And our interests are aligned in that essentially, your honor, both the county and the appellant want this case voluntarily dismissed. As Justice Overstreet noted, this case is 15 years old. I have not seen a case that has this much convoluted facts. The fact that it's 15 years old has a really unique procedural history. I'll talk to other lawyers and their eyes will just glaze over like where is all this going? It is that complicated of a case and I really feel it. I'm struggling being on this case for three or four years understanding it all. Mr. Barger's been on it 10, Ms. Noren in her office has been on it 15. They understand it a little bit better and you guys are just looking at it probably for the first time again recently. So I don't envy your job. But whenever something's this complicated, I believe the best thing to do is just to keep it simple. And my simple argument on behalf of the county is that the circuit court erred when it failed to grant that voluntary dismissal. And the reasons why include the following. That the original plaintiffs were the Township Road District in the county of Shelby. They are on one side against the appellants. Fast forward 15 years. The township is for all intents and purposes out. They don't want to assume any more township roads so they're not really pursuing this. And it is the county who's technically the plaintiff and the galvans. And we all decide that we do not want to participate in this. Now part of the issue of that being is that for some reason in the 08 order, the county agreed that if the galvans didn't build this subdivision pursuant to a 72 plat, the county would start doing it. I don't think the county really ever realized what that order meant. So now in 2012, in come the appellees essentially, the curls and good ones, and they're saying the county has got to build this subdivision in accordance with that 08 order. Well, they weren't the original parties. The original parties were the township, the county, and the appellants. Township's out. The county and the appellant are like, let's walk away. This is silly. He wants to build a subdivision in accordance with 1972 platting where you have quarter acre lots, where you can't even fit modern septic systems on those lots. Let's just walk away. However, the court said no. The court denied our request for voluntary dismissal. And the only thing I can come up with when you look at the record is she's trying to protect it, and I understand where the trial court was coming from, the interest of the curls and good ones, and that, hey, you know, they would benefit by having more houses around them or, you know, a house, a modern house, obviously, across the street would pretty much increase their property value. I get it. I get what the judge was trying to look at. But it was still abuse of discretion because, one, they weren't adequate proper parties, and, two, when you look at it, ultimately, by failing to grant this voluntary dismissal, ultimately the court has put it upon the county, a county of less than 30,000 people, to develop a subdivision. And that is clearly we're the plaintiffs. We're the plaintiffs, and all of a sudden the county is going to be required to develop a subdivision. So essentially, judge, we just want out. We want out. The appellant wants out. And so it was error when the trial court denied that motion for voluntary dismissal. Counsel, under the 08 order, the county was responsible if the Galvins did not develop it. That is correct. So who's going to press the issue if not an intervener? Well, that would be correct. And I think that's where the judge was, Judge Custer was, you know, essentially siding with them. But they weren't parties. I mean, so I'm just struggling to see how somebody can come out who was not part of it to enforce this order that the plaintiff originally sought the county. And now we're saying we don't want it anymore. So I just don't, they're not proper, they don't have proper standing or the proper, they're not the proper party to enforce this. Essentially, this is an agreement between us and the appellant, and we just want to walk away from it. I've taken up a little bit of Ms. Norton's time. If there are no questions, thank you. Good morning, Counsel. My name is Liz Norton. I'm with Defendant Attorneys in Shelbyville, Illinois, and I represent William Curl and Mark and Carla Goodwin, who are the interveners in this case. It is important to highlight why we're here. We're here because there's a 2008 judgment that was not complied with by the Galvin defendants. And then the county also did nothing, and pursuant to the 2008 judgment, a mandamus action was filed by the two homeowners that have a vested interest in the subdivided dedicated plot. During that mandamus hearing, the county asked for a stay because they wanted time to request an amendment to the underlying 2008 judgment because it violated the zoning ordinance. To date, there's no evidence in the record as to how that 2008 judgment violates the zoning ordinance, none whatsoever. The zoning ordinance that was in effect at the time of the 2008 judgment was a zoning ordinance last modified in 2005, so that's important for the court to understand. My argument at the trial court level was that smoke and mirrors, they just went out from underneath the obligations of the 2008 judgment. I said that from the first day that we appeared in their post-judgment pleadings. Here we are today in the appellate court, and they can see we don't want to comply with the 2008 judgment. Why should the county be sitting at counsel table to my right with the appellant? Because they don't want to incur the cost that they're obligated to incur under the 2008 judgment to subdivide. It's really easy. They switch teams. The court asked a good question about the 2008 judgment. If the interveners weren't allowed to intervene, who else is going to enforce it? No one is because they don't want to have to construct the subdivision, and they know Galvin's are not. Galvin's have done absolutely nothing. They've ignored every single judgment of the court, every single order of the court. They'd rather pay a $25,000 sanction than to do anything with regard to that property. Can the family or anyone else, for that matter, build on the current plot of subdivision or the modified pursuit of the 2017 order? Yes. Build on more than one lot. The trial court mentioned that to them numerous times on the record. Does William Curl and Mark and Carla Goodwin have appropriate intervener status? Do they have standing? Yes, they do. Under Illinois law, you don't have to file a complaint in a post-judgment action such as this in order to comply with Section 408E. You can adopt another person's pleading, another party's pleading. They did that. They adopted the plaintiff township's motion to dismiss the amended joint motion to amend and vacate the 2008 judgment. So the law is clear on that. I've cited the Barth case. There's the Burkett case. You don't have to file a new complaint, especially in a case like this that's post-judgment. It's uncontroverted that the interveners have the right because they are so situated as to be adversely affected by the case because their, again, homes are located within the plotted subdivision. The Plot Act talks about the fact they have to be on board for any vacation, any replot, any modification. They're entrusted homeowners within the subdivision. There's some clever argument made by appellants. Well, we're going to vacate all the property outside the two homes. Well, you can't do that, appellants. You conveniently left out citation to Section 6 of the Plot Act in your brief. The Section 6, the last sentence says, before Section 7, that homeowners within the plot have to consent. They have to be part of the process. You can't abridge their rights that they have to the streets, the curves, the gutters, as outlined in the plot when they plot into the subdivision. You know, they cite Section 7 that says we can vacate partial vacation of subdivision. Well, don't forget the last sentence of Section 6 that says Section 7 is subject to all of the requirements of Section 6. You can't do that. We are a necessary parties. In fact, under the law and the Illinois Supreme Court, the purpose of 4A is to liberalize intervention to avoid relitigation of issues in a second suit. You know, in dicta of other cases, the courts talked about the reason that we would not grant an intervention is because we're entitled to know what the claims are before we make an intervention decision. Did the trial court know our claims? Yes. How? Because they came about because of our maintenance action. That's why we're here. The county successfully stated to go amend the underlying 2008 judgment because they couldn't possibly comply. Again, no evidence of that still to this date. And then where are we at now? We're now in the exact same place I knew that we would be. They're asking to get out from underneath the requirements of the 2008 judgment. But we are appropriate parties. And, in fact, if the court didn't allow us to intervene, any potential order may very well be void because what is that going to do? It's just going to create additional litigation because under the Platt Act, they can't do anything with the subdivision without the homeowners who bought into the Platt Act. If their rights are going to be abridged, we have to be part of that process. When did your clients buy in? The dates that they bought in? It preceded the Galvin's acquisition of it. So I think Galvin's bought in 2002, and the record will speak for itself, but it was before that date. All right, so moving on. They made the argument as it relates to whether or not it was an issue before the court at the time of the 2017 order. So I'm going to do the best I can to respond to that. Again, when you look at the listing of the filings, you'll see all the issues that are pending. At the time that the 2017 order was entered, we had filed an objection to their joint subdivision Platt proposal. We, of course, had filed the initial through adoption motion to dismiss. We had filed a supplemental objection when they did an amended joint Platt proposal. We then, at the court's direction, filed a motion to approve an alternate Platt. So there are lots of things pending before the court at the time that 2017 order was entered. The agreed judgment with the township that was entered before that 17 order specifically states in the record C1116, quote, the foregoing provisions as set forth above shall be included in the final modified Lithia State subdivision. So we keep hearing these arguments about the township wants it done too. They're not in it. It all should be dismissed. The township had a judgment pending that said when you have the final modified Platt, not that there's not going to be a Platt, not that there's going to be a vacation, but when you have this final modified Platt, make sure the terms of this judgment are included in that. So please take a look at that agreed judgment, especially in their reply to making all these arguments about the fact that there's no issue, the township's out of it. No, there's a pending judgment with the township that has to be incorporated in what they anticipated by their own terms to be a final modified Lithia State subdivision Platt. We knew that there was going to be a further modification. What's happened here is, you know, they make this argument about the court did not have the jurisdiction. The fact of the matter is the court had equity jurisdiction the minute they filed this post-judgment motion. They just didn't get what they wanted. If you look closely at the court's docket order of 2014, she grants in part and denies in part the request to amend. So if you look, please, carefully at that docket order. She does not grant in any part the request to vacate. Now, I know they say, well, we didn't ask for that. And then they make a whole big argument in their reply, we only asked for vacation. Well, that would be ignoring the title of the brief. That would be ignoring the introduction of what relief they're asking for. Because they did not place that request in their wherefore language doesn't mean that the brief and that the filing itself doesn't open Pandora's box to the court having now the obligation to resolve every issue before it to avoid the relitigation of those issues in the future. So I appreciate that the appellants and the appellee county is unhappy that the court is basically saying, I'll do exactly what I said I was going to do when we appear on the medamus action. I'm going to modify this plat. But I'm going to do it in accordance with my 2008 judgment. And I'm going to make sure that this property is going to be constructed in the same manner that I originally ordered that was upheld by this appellate court. But I'm going to make the lots larger because that's what you're asking me for. Again, still no evidence as to why the 2008 ordinance was allegedly violated. But I'm going to go ahead and I'm going to amend it. And I'm going to make the lots larger because you're telling me your family wants to build on it. And she did that. But they still don't like it. Why? Because they don't want to do any of it. And how do I know that? Why? Because after she entered that order in 2014, it took two years, but the county then finally filed exactly what I knew was coming. We want a motion to dismiss our initial 2005 complaint. That's what it says. Read the motion to dismiss filed by the county. We want to dismiss our complaint. They're not asking to dismiss the post-judgment litigation they've instituted. They want to dismiss the entirety of the case. So at first they argue, we can't comply. It violates the zoning ordinance. The lots are too small. Then they argue the first plot that they proposed to the court eliminated 10-plus acres from the entire subdivision. The judge says you can't do that. You can't vacate. You've got two homeowners that have bought in. Okay, well, here's an amendment. We'll use the four corners, but there's going to be, I think it was four lots coming from 32 or whatever it is. She says, no, I'm not doing that. This is going to be a constructed subdivision just like I ordered back in 2008 if, not when, but if I amend my order to allow an amended plot. If I do that, it's going to be a subdivision that's in the same spirit of 2008. And when they didn't do it, she said, you know what, interveners, you take a shot at it. Show me what you've got. And then she, of course, created her own amended plot and gave them exactly what they asked for. But they don't like the fact that she did not vacate. She went to great lengths, and they also made an argument in the Lord Plyleaf that we never addressed that issue. But I do want to point you to pages 27 to 29 of my brief in addition to issue 1C. You know, we talk at length as it relates to why the court did not vacate the 2008 judgment. That certainly is not an issue that we ignored. So I think it's important for the court to understand that the trial court went to great lengths on the record to explain to all the parties, I did not and I am not vacating my OA judgment that's been upheld by the appellate court, and then goes further to say, these are the following options that I have as your trial judge. I may not do anything with my 08, but I'm listening to you, Galvins, and I know if I don't do something, you're probably not going to construct, and I hear you counting that, you know, your board is different today than it was back in the time the agreed judgment was submitted in 2008, but I'm not letting you off the hook. You know what's really interesting is if you look at the record, Mr. Killer, on behalf of the county, back in June of 2016, June 20th, and this is record 381, he specifically said, quote, what the county's request or goal is today is to have the amended plat that was jointly submitted by the county and Mr. Barber's client to be entered by the court at today's court hearing, and that that amended subdivision plat be the one that Galvins is going to be required to prepare, and then essentially the county would be responsible if Mr. Barber's client failed to create the subdivision in accordance with this amended plat. Well, why is that comment on the record at the time of that hearing in 2016, right before a county files its motion to dismiss the underlying complaint? Why is that so important? Because number one, they concede the fact that they know that the 08 judgment still exists because essentially the county's going to be responsible if Galvins don't construct. I mean, you say that right on the record. Why else is it important? Because it shows that they knew they gave the court jurisdiction to handle these issues. It's saying to the judge, judge, please approve our amended plat. We know we've given you this jurisdiction to do this. Please approve it. Now we are here at the appellate court level, and Galvins are arguing we don't need the county's approval. Oh, excuse me, Galvins, we don't need the court's approval. We only need the county's approval pursuant to the plat act because it's outside the jurisdiction of the admissible limits, and so any replat should go to the county. We don't need the court to do anything. She vacated her judgment. We want your appellate court to uphold that argument, and then we're just going to go to the county with whatever we want. So I think it's important for this appellate court to understand that these briefs are so different than what you see in the record as to what happened when we appeared before the trial court. Again, I have the county saying to the judge in 2016, please approve my amended plat. I know the county's on board, and now they're coming here arguing that the 2008 judgment at that time had been vacated. That makes no sense. It doesn't match the record of what happened in the trial court level. The county's motion to dismiss was properly denied. The standard, of course, is abusive discretion. I didn't say this. The court knows this, but, of course, the intervener status is also abusive discretion standard. It's under Section 1009. There's a concession in the reply brief that, of course, this motion to dismiss was presented after trial and judgment, and so what does that mean? That means that Illinois law provides that the court has full discretion as to whether or not to allow the case to be dismissed. I've argued a bit today before this court as it relates to why the township was not adequate. The township has to be a party to a dismissal. They're the co-plaintiffs of the case. They did not join in the motion to dismiss. The motion to dismiss was filed by Plaintiff County, and then there was, of course, a pleading filed by Galvin's that said, yes, oh, yes, please, that sounds like a great idea. But the township has never weighed in on that in any of their filings. And, again, we have that judgment that says, township says and Galvin's and county, when we have the modified plot, make sure that all these items in our judgment are included, which indicates to me that they knew there was a modified plot coming down the pipe. Okay. Finally, I'll move into the area of the taking. Illinois law provides that for there to be a taking of the Supreme Court beside the Hampton case, there needs to be a physical invasion of private property or the radical interference with a private property owner's use and enjoyment of the property. There is no radical interference as to any of the allegations of taking. Anything that was done that is alleged as a taking does not interfere with the use of the property as a plotted subdivision. None of it. One argument they make is that the general order of the court with this modified plot from 2017 is a taking. Thank you. Thank you. Thank you. I will keep this very brief. As I pointed out before and pointed out in our brief, Mr. Curl and the Goodwins are not proper parties in this case. I would submit to that this court would even be supported in ignoring their argument because they have not followed intervention statute despite the fact that's been pointed out to them. They haven't complied a number of times. Counsel, opposing counsel says, hey, we don't have to do that because we had this mandamus action. We adopted the pleadings of other parties and, therefore, any statutory requirements await. I was going to get to that in a second. Okay. You may continue. What I was going to say is when the order of October 31, 2014, was entered, all the relief requested for in the amended joint motion and the motion to dismiss was resolved. I would contend, first, that a motion to dismiss by a plaintiff is not a proper party, a proper pleading. Second, everything was resolved with regard to that motion on October 31, 2014, and there was no complaint or petition on file after that date. The county has the discretion of whether to prosecute this action. It changed its mind. There's a different state's attorney. And at this point, the county officers, including the county board, fully understand this order. They don't want it. They don't want to prosecute the gallows. The amended joint motion that we filed, which was, in fact, a stipulation with the county of Shelby. In fact, most of these pleadings filed between joint pleadings were stipulations with the county and the gallows. As for two things, number one, that the order of June 11, 2008, be vacated, and number two, that the matter be submitted to the county for replatting. Replatting before the county is the proper way of doing this. It's not the duty or obligation of the courts to replat land, and the Platt Act suggests the county board is the proper way of doing that. Equity does not give the trial court the opportunity to prosecute an action. That's, in essence, what happened with this case after the order of October 31, 2014. Thank you very much.